1  Randy H. McMurray, Esq. (SBN 126888)
   *Rmcmurray@law-mh.com*
2  Yana G. Henriks, Esq. (SBN 250638)
   *Yhenriks@law-mh.com*
3  Lauren I. Freidenberg, Esq. (SBN 312428)
   *Lfreidenberg@law-mh.com*
4  **McMURRAY HENRIKS, LLP**
   811 Wilshire Blvd., Suite 1640
5  Los Angeles, California 90017
   Telephone: (323) 931-6200
6  Facsimile: (323) 931-9521
7
   *Attorneys for Plaintiffs Demajay Williams, et al.*
8
9              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
10
11  DEMAJAY WILLIAMS, an individual;      **Case No.: 5:19-cv-00397-JGB-SHKx**
    D.W., a minor by and through her       *[Assigned to Hon. District Judge Jesus*
12  guardian *ad litem* Desiree Renee Wilson;   *G. Bernal]*
    J.W., a minor by and through her
13  guardian *ad litem* Danielle Banks; and   **PLAINTIFFS DEMAJAY**
    TAMMY JOHNSON WILLIAMS, an            **WILLIAMS, D.W., JW., TAMMY**
14  individual,                            **JOHNSON WILLIAMS, AND**
                    Plaintiffs,            **LARISA WASHINGTON'S**
15                                         **NOTICE OF JOINT MOTION**
             v.                            **AND JOINT MOTION TO STRIKE**
16                                         **DEFENDANT'S ANSWER AND**
    KOHL'S DEPARTMENT STORES,             **MONETARY SANCTIONS FOR**
17  INC., a Delaware corporation; KOHL'S   **SPOLIATION OF EVIDENCE**
    ILLINOIS, INC., a Nevada corporation;  **AGAINST KOHL'S**
18  COUNTY OF RIVERSIDE, a California      **DEPARTMENT STORE**
    municipal entity; RIVERSIDE
19  COUNTY SHERIFF'S DEPARTMENT,          **Date:      April 13, 2020**
    a California municipal entity; DEPUTY   **Time:      9:00 a.m.**
20  GORDON MITCHELL, an individual;       **Dept.      1**
    DEPUTY JUSTIN TIBBETTS, an
21  individual; DEPUTY SETH MANNIE,       [Concurrently filed with Declaration of
    an individual; ERICK                  Yana G. Henriks, Esq., Declaration of
22  VENTURAIRAHETA,                        Lauren I. Freidenberg, Esq.,
    an individual; JOHN                    Declaration of Samuel O. Ogbogu,
23  BLAKEMEN, an individual; and DOES      Esq., Index of Exhibits, and Exhibits in
    1-30, inclusive,                       Support Thereof]
24                  Defendants.
25
26
27
28

**TO THE HONORABLE COURT AND TO THE PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 13, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the above-captioned court, located at George E. Brown, Jr. Federal Building and United States Courthouse, 3470 12th St., Riverside, CA 92501, Plaintiffs Demajay Williams, *et al.*, ("the Williams Plaintiffs") by and through their attorneys of record and Plaintiff Larisa Washington ("Plaintiff Washington),[1] by and through her attorney of record will move the Court for Sanctions and Adverse Jury Instruction for Spoliation of Evidence against Defendant Kohl's Department Store.

This motion is brought against Defendant Kohl's Department Store for the destruction and/or spoliation of evidence as it pertains to video surveillance footage depicting the incident giving rise to this lawsuit, and the alleged "upgrade" of the server storage system that occurred after Plaintiffs served a preservation letter. Plaintiffs respectfully request an order from the Court establishing liability and striking defendant's answer in its entirety. Plaintiffs also seek monetary sanctions. Plaintiff requests an evidentiary hearing for issues including but not limited to the following: (1) bad faith conduct of defendant's agents, employees, and/or attorneys; (2) misrepresentations to the Court and to counsel; (3) intentional selection of video surveillance footage to be preserved with the rest having been destroyed, thereby preventing Plaintiffs from being able to conduct a meaningful comparison; (4) the "upgrade" of the server system that destroyed the entire hard drive and any access to the full video surveillance footage stored therein; and (5) the destruction and/or concealment of evidence from the exterior video surveillance camera.

Plaintiffs' Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declaration of Yana

---

[1] The Williams Plaintiffs and Plaintiff Washington are hereinafter collectively referred to as "Plaintiffs."

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY
SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

G. Henriks, Esq., declaration of Lauren I. Freidenberg, Esq., declaration of Samuel O. Ogbogu, Esq., exhibits concurrently filed therein, Proposed Order, as well as the complete files and records in this case, and such other additional evidence as the Court may admit.

**NOTICE OF CONFERENCE OF COUNSEL PURSUANT TO LOCAL RULE 7-3**

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on March 5, 2020.   On February 26, 2020, Plaintiffs' counsel circulated a detailed letter stating the grounds for the motion for sanctions and adverse jury instruction for the spoliation of evidence. The parties engaged in a telephonic conference to discuss the issues to be raised in the Joint Motion.  (A true and correct copy of the declaration of Yana G. Henriks, Esq. is concurrently filed hereto at ¶¶ 25, 26).

Respectfully submitted,

DATED: March 16, 2020       **MCMURRAY HENRICKS LLP**

By: /s/ Yana G. Henriks
**YANA G. HENRIKS**
**LAUREN I. FREIDENBERG**
Attorneys for Plaintiffs  DEMAJAY
WILLIAMS, DESTINY WILLIAMS, a
minor by and through her guardian *ad
litem* Desiree Renee Wilson, JODI
WILLIAMS, , a minor by and through her
guardian *ad litem* Danielle Banks, and
TAMMY JOHNSON

DATED: March 16, 2020       **SAMUEL O. OGBOGU INC. A.P.L.C.**


By:        /s/ Sam O. Ogbogu
**SAMUEL O. OGBOGU**
Attorney for Plaintiff,
LARISSA WASHINGTON, et al.

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY
SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JOINT MOTION SIGNATURE CERTIFICATION

Pursuant to Local Rule 5-4.3.4(a)(2) of the United States District Court for the Central District of California, I certify that the content of this document, and the accompanying proposed order, is acceptable to named counsel above and that I have obtained authorization from counsel to affix his electronic signatures to this document.

DATED: March 16, 2020 **MCMURRAY HENRICKS LLP**

By: /s/ Yana G. Henriks
**YANA G. HENRIKS**
**LAUREN I. FREIDENBERG**
Attorneys for Plaintiffs  DEMAJAY
WILLIAMS, DESTINY WILLIAMS, a
minor by and through her guardian *ad
litem* Desiree Renee Wilson, JODI
WILLIAMS, , a minor by and through her
guardian *ad litem* Danielle Banks, and
TAMMY JOHNSON

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY
SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND .................................................................4

III. PROCEDURAL HISTORY ....................................................................4

    A.  PLAINTIFFS SERVED THREE (3) PRESERVATION LETTERS ON KOHL'S ............4

    B.  VIDEO SURVEILLANCE OF THE INCIDENT DOES NOT SHOW THE PHYSICAL
        ALTERCATION WITH LOSS PREVENTION DEFENDANTS ................................5

    C.  DEFENDANT KOHL'S PRODUCED PHOTOGRAPHS OF MR. WILLIAMS AT THE
        SCENE OF THE INCIDENT ON A MEDICAL GURNEY ...........................................6

    D.  COUNSEL FOR KOHL'S STATED THAT THE EMPLOYEE WHO TOOK THE
        PHOTOGRAPHS WAS ON VACATION....................................................................7

    E.  FORMAL DISCOVERY DISPUTE HEARING GOVERNING DEFENDANT'S
        DEFICIENT DISCOVERY RESPONSES ....................................................................8

    F.  DENNY JENNER, REGIONAL LOSS PREVENTION MANAGER, TESTIFIED THAT
        THERE WERE NO CAMERAS IN THE REAR OF KOHL'S......................................9

    G.  KOHL'S NOTIFIED PLAINTIFFS OF THE DESTRUCTION OF THE SERVER TWO
        DAYS PRIORS TO THE PHYSICAL AND FORENSIC INSPECTION OF KOHL'S ......10

    H.  KHOL'S HAS NO DOCUMENTATION RELATED TO ITS VENDORS THAT
        INSTALLED AND MAINTAINED THE VIDEO SURVEILLANCE SYSTEM .............11

    I.  FORMAL DISCOVERY DISPUTE GOVERNING VENDORS OF THE VIDEO
        SURVEILLANCE SYSTEM AND VIDEO SURVEILLANCE IN NATIVE FORMAT ....13

    J.  SECOND FORMAL DISCOVERY DISPUTE GOVERNING VENDORS OF THE VIDEO
        SURVEILLANCE SYSTEM .....................................................................................13

    K.  ROBERT HALLIBURTON, SENIOR MANAGER OF CORPORATE AND FIELD
        SECURITY, HAD NO EXPLANATION FOR THE VIDEO CAMERA IN THE REAR OF
        KOHL'S................................................................................................................15

    L.  KOHL'S PRODUCED DOCUMENTS AFTER THE DEPOSITION OF MR.
        HALLIBURTON DESPITE MAGISTRATE JUDGE KEWALRAMANI'S ORDER .......16

    M.  CURRENT STATUS OF DISCOVERY AT PRESENT DATE ...................................16

IV. ARGUMENT.........................................................................................19

    A.  DEFENDANT KOHL'S INTENTIONALLY DESTROYED VIDEO SURVEILLANCE
        FOOTAGE AND THE SERVER SYSTEM ...........................................................19

i

1.   Kohl's Destroyed the Evidence in Violation of its Duty to Preserve the Video Surveillance Footage..................................................................19

2.   Defendant Knowingly Destroyed Evidence after Plaintiffs Served Three Preservation Letters ....................................................................20

3.   The Video Surveillance Footage Was Integral to the Plaintiffs' Case .....22

B.  COUNSEL FOR DEFENDANT KOHL'S IS CULPABLE FOR THE SPOLIATION OF EVIDENCE...............................................................................23

C.  DEFENDANT'S HAVE A PATTERN AND PRACTICE OF DESTROYING EVIDENCE AND PLAINTIFFS SEEK TO STRIKE DEFENDANT'S ANSWER AND SANCTIONS .24

**V.   CONCLUSION ..............................................................................25**

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

1
2

# TABLE OF AUTHORITIES

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Cases:

*Clear-View Techs., Inc. v. Rasnick*, 2015 WL 2251005, at *7 (N.D. Cal. May 13, 2015)................................................................................................22

*Cottle-Banks v. Cox Commc'ns, Inc.*, 2013 WL 2244333, at *14 (S.D. Cal. May 21, 2013)................................................................................................23

*Glass v. Beer*, 2007 WL 1456059, at *2 (E.D. Cal. May 17, 2007) ....................22

*Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ......................................24

*Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir.1993) ........................................28

*HM Elecs., Inc. v. R.F. Techs., Inc.*, 2015 WL 4714908 (S.D. Cal. Aug. 7, 2015) ................................................................................................26

*Jimenez v. Menzies Aviation Inc.*, 2016 WL 3232793, at *4 (N.D. Cal. June 13, 2016)................................................................................................23

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) .................22

*Knickerbocker v. Corinthian Coll.*, 298 F.R.D. 670, 677-78 (W.D. Wash 2014) .26

*Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)..................................22

*Matteo v. Kohl's Dep't Stores, Inc.*, 2012 WL 760317 (S.D.N.Y. 2012) ..............27

*Montoya v. Orange Cnty. Sheriff's Dept.*, 2013 WL 6705992, at *7 (C.D. Cal. Dec. 18, 2013) ................................................................................................22

*Olney v. Job.com*, 2014 WL 5430350, at *14 (E.D. Cal. Oct. 24, 2014)...............24

*Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932 (S.D. Cal. Jan. 7, 2008).....26

*Toppan Photomasks, Inc. v. Park,* No. 13–CV–03323–MMC, 2014 WL 2567914, at *5 (N.D. Cal. 2014) ................................................................................................23

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) ................................................................................................22

*Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. MJG -06-2662, 2010 U.S. Dist. LEXIS 93644, at *131 (D. Md. Sept. 9, 2010) ..................................................29

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY
SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

*Waters v. Kohl's Dep't Stores, Inc.*, 2015 WL 1519657, at *4 (N.D. Cal. Apr. 2, 2015) ..................................................................................................25

*Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, 2014 WL 6851607, at *9 (S.D. Cal. June 16, 2014) ...................................................................22

**Statutes:**

Fed. R. Civ .P. 12(f) ...................................................................................28

Fed. R. Civ. P. 30(b)(6) ...................................................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On January 12, 2018, decedent Roderick Williams was in a physical altercation with loss prevention officers at the Kohl's Department Store (hereinafter "defendant" or "Kohl's") in Menifee, California. The altercation took place in the rear of the store near the emergency exit door.  On January 14, 2018, Mr. Williams succumbed to his injuries.  The County of Riverside Coroner's Office declared the death of Mr. Williams to be a homicide, and that the altercation with loss prevention officers (defendants Ventura and Blakeman) was a significant condition contributing to Mr. Williams death. Plaintiffs bring this motion to strike defendant's answer and seek monetary sanctions because defendant Kohl's knowingly destroyed evidence it had a duty to preserve.  Kohl's destroyed integral evidence in blatant violation of Plaintiffs' three (3) preservation letters. **Defendant's litigation tactic is to destroy evidence when exposed to high liability cases**.  Defendant prefers to bear the consequences of an adverse jury instruction rather than produce damaging video surveillance footage.

**Plaintiffs served three (3) preservation letters** on defendant Kohl's.  The first preservation letter was served on January 16, 2018, two (2) days after the death of Mr. Williams.  On or about November 20, 2019, the parties appeared before Magistrate Judge Kewalramani regarding the potential for spoliation of evidence by defendant Kohl's.  Plaintiffs confirmed the destruction of evidence in January of 2020 when the Senior Manager of Corporate and Field Security for Kohl's, Robert Halliburton, declared that video surveillance cameras, servers, and workstations at the Menifee Kohl's had been "upgraded" in February of 2018 (approximately one (1) month after the incident with Mr. Williams).   Mr. Halliburton declared that any metadata previously stored on the server was unrecoverable, and that the server system had been "recycled" by the vendor. Plaintiffs have no other way to obtain video surveillance footage of the physical attack by the loss prevention officers of

Mr. Williams at the rear of the store.  Kohl's knowingly destroyed evidence that was integral to Plaintiffs' case.   Plaintiffs highlight the following spoliated evidence:

    **1.**      **Video surveillance footage** was produced in discovery that depicted Mr. Williams walking around the outside of Kohl's from numerous angles before entering the store.  However, there is no video surveillance footage that depicted the incident. There is no video surveillance footage of Riverside County Sheriff's deputies or medical first responders arriving/departing the scene of the incident.

    i.    Kohl's produced what it purported to be the surveillance video depicting Mr. Williams while he was inside the store. However, forensic analysis of the video shows that there is a slight but material difference between the video produced by Kohl's and the video produced by County defendants. Both were alleged to have been from the same source – Kohl's.

    **2.**      There is a **video surveillance camera** located on the rear exterior wall of Kohl's that is directed towards the scene of the incident, and would have captured the scene of the incident in its entirety.  However, no video surveillance footage was produced from this camera.

    i.    Counsel for Kohl's represented to the Court and Mr. Denny Jenner, Regional Loss Prevention Manager (Kohl's Fed. R. Civ. P. 30(b)(6) Person Most Knowledgeable) testified in his deposition that no surveillance camera existed in the rear exterior of the store. Subsequent investigation by counsel of the Williams Plaintiffs revealed that in fact a surveillance camera existed at the back.

    ii.    Kohl's subsequently explained that the surveillance camera was a "dummy" camera. Later the story changed from the camera being a "dummy," and instead that it was not connected to the system.

    iii.    Neither Mr. Jenner nor Mr. Halliburton could say that the surveillance camera was or was not connected on the date of the incident.

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

iv.   Prior to invoking the Fifth Amendment, Kohl's loss prevention employee, defendant Ventura admitted to Deputy Tibbetts that he observed, through the surveillance camera, Mr. Williams park his vehicle.

**3.**   On February 20, 2020, the parties were scheduled to conduct an inspection of Kohl's Department Store in Menifee, California.  The inspection was to include a physical inspection of the premises and a forensic inspection of the video surveillance system, server system, hard drive, and Loss Prevention Management System.  Two days prior to the inspection, Mr. Robert Halliburton (Senior Manager of Corporate and Field Security of Koh's Department Store) provided a declaration that **Kohl's "upgraded" the server that held backed-up copies of the video surveillance** to the hard drive on February 21, 2018, and that the "upgrade" prevented any metadata recovery from the old server system, which was thereafter recycled.  (Exhibit 15 at ¶¶ 6, 7).

**4.**   Documentation and/or communications governing **the vendors that installed, maintained, and serviced the surveillance system and server system** at the Menifee, California Kohl's location were not produced during discovery, and no longer exist.  (Exhibit 22 at ¶¶ 3, 4).

In conjunction with Plaintiffs' Motion for Summary Judgment and/or Summary Adjudication against Kohl's Department Store [Docket No. 147], Plaintiffs seek an order from the Court establishing liability and striking defendant's answer in its entirety. Plaintiffs also seek monetary sanctions.  In the alternative, Plaintiffs request an evidentiary hearing for findings on the following: (1) bad faith conduct of defendant's agents, employees, and/or attorneys; (2) misrepresentations to the Court and to counsel; (3) intentional selection of video surveillance footage to be preserved with the rest having been destroyed, thereby preventing Plaintiffs from being able to conduct a meaningful comparison; (4) the "upgrade" of the server system that destroyed the entire hard drive and any access to the full video

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

surveillance footage stored therein; and (5) the destruction and/or concealment of evidence from the exterior video surveillance camera.

## II.   FACTUAL BACKGROUND

Plaintiff hereby incorporates by reference as is fully set forth herein their statement of facts in support of Plaintiffs' Motions for Summary Judgment, or in the Alternative, Summary Adjudication against the County of Riverside, *et al*. [Docket No. 146], and Defendants Kohl's, Ventura, and Blakeman [Docket No. 147], and the exhibits in support thereof.  For judicial economy and efficiency, Plaintiffs incorporate by reference the above mentioned statement of facts, separate statement of uncontroverted fact references, and exhibits in support thereof as if fully set forth herein.  Therefore, Plaintiffs' recitation of events shall begin with the procedural history of this case, set forth below.

## III.   PROCEDURAL HISTORY

Three separate actions were filed as a result of the death of Roderick Williams. This Court consolidated the three cases on May 23, 2019. [Docket No. 24]. The parties have been engaged in numerous formal and informal discovery disputes. The majority of the discovery disputes concerned defendant Kohl's non-responsive document production to Plaintiffs' request for production, failure to provide rule compliant responses to Plaintiffs' Interrogatories, and/or destruction of evidence.  (*See* concurrently filed hereto the declaration of Yana G. Henriks, Esq. ("Henriks Declaration") at ¶ 6).  After the completion of discovery, Plaintiffs bring this motion to strike defendant's answer and monetary sanctions for the willful destruction of evidence.

### A. Plaintiffs Served Three (3) Preservation Letters on Kohl's

On January 12, 2018, decedent Roderick Williams was in an altercation with loss prevention officers at the Kohl's Department Store (hereinafter "defendant" or "Kohl's") in Menifee, California. On January 14, 2018, Mr. Williams succumbed to his injuries.  (Henriks Declaration at ¶ 2). **Plaintiffs served three (3) separate**

**preservation letters on defendant Kohl's**.  First, the Law Offices of Portasha Moore served a letter on January 18, 2018.  (*See* Exhibit 1).  McMurray Henriks, LLP, current counsel for the Williams Plaintiffs, served a preservation letter on Kohl's on January 22, 2018. (*See* Exhibit 2).   Samuel O. Ogbogu, Inc., A Professional Corporation, current counsel for Plaintiff Washington, served a preservation letter on Kohl's on March 8, 2018.  (*See* Exhibit 3).  All three (3) preservation letters demanded that Kohl's to maintain and preserve any and all video surveillance footage from the incident, including any and all electronically stored information, and the storage of any metadata on the server system.  (*See* Exhibits 1-3; *see also* Henriks Declaration at ¶¶ 3-6).  Counsel for the Williams Plaintiffs spoke with Ms. Wilkinson, in-house counsel for Kohl's, on at least two separate occasions regarding the content and scope of the preservation letter served on Kohl's.   (*See* Henriks Declaration at ¶ 6; *see also* Exhibit 27).

**B. <u>Video Surveillance of the Incident Does Not Show the Physical Altercation with Loss Prevention Defendants</u>**

Video surveillance footage of the incident was produced in discovery by both defendant Kohl's and defendant County of Riverside, *et al*.  (*See* Henriks Declaration at ¶ 8).  The surveillance footage included video from the interior of Kohl's, and the exterior of Kohl's.  (*See id*.).  The exterior video surveillance footage depicted Mr. Williams walking around the outside of Kohl's from numerous angles before entering the store at the front entrance. (*See id*.).  However, **no video surveillance footage was produced that depicted the physical altercation between defendant loss prevention officers and Mr. Williams**, which took place outside at the rear of the store. (*See id*. at ¶ 9).   No video surveillance footage was produced depicting Riverside County Sheriff's deputies or medical first responders arriving/departing the scene of the incident.  (*See id*.).

Of significance, the video surveillance footage produced of the interior of the store shows the surveillance camera zoom in on Mr. Williams within seconds of

walking in the entrance.  Defendant Ventura, loss prevention officer for Kohl's, stated that he and defendant Blakeman saw Mr. Williams park his car in the back of Kohl's.  (*See* Exhibit 25 at 19:18-20:21, 21:4-10, 22:4-23:5).  The loss prevention office has no windows, and no way of seeing the rear of Kohl's unless there was video surveillance footage. (*See id.*; *see also* concurrently filed hereto the declaration of Lauren I. Freidenberg, Esq. ("Freidenberg Declaration") at ¶ 7).

## C. Defendant Kohl's Produced Photographs of Mr. Williams at the Scene of the Incident on a Medical Gurney

On August 15, 2019, defendant Kohl's produced responses to Plaintiff Washington's Request for Production (Set One).  (*See* filed concurrently hereto the declaration of Samuel Ogbogu, Esq. ("Ogbogu Declaration") at ¶ 4).   Three photographs of Mr. Williams were produced from the scene of the incident.  Two photographs were of Mr. Williams on the AMR gurney, and another photograph depicted Mr. Williams handcuffed and leaning on the ground. (*See* Exhibit 10). These photographs raised concern for Plaintiffs as to the potential for spoliation of evidence and/or the failure to produce video surveillance footage. First, the photographs of Mr. Williams at the scene listed a "Loss Prevention Management System" reference number (SR-1282-18-1347) at the top and the bottom of the photographs.  (*See id.*).  Second, the photograph description at the bottom indicated that photographs had been enhanced.  For example, on the photograph bates-stamped "KOHL'S000018," the image had been zoomed in at approximately 232%. (*See id.*).  Lastly, the angle at which the photographs were taken appear to be from an aerial angle.  It would not be possible for a person to take the photographs standing on the ground and be able to capture the full bodies of both a medical first responder and a County of Riverside Sheriff's deputy, in addition to almost the entire medical gurney upon which Mr. Williams was placed.  (*See* Henriks Declaration at ¶ 10).

**D. Counsel for Kohl's Stated that the Employee Who Took the Photographs was on Vacation**

The Williams Plaintiffs propounded discovery for additional information and/or documentation relating to the photographs of Mr. Williams on the AMR gurney. (*See id.* at ¶ 11). On October 28, 2019, defendant produced its Responses to Interrogatories stating that defendant Ventura took the photographs at the scene of the incident. (*See* Exhibit 4). However, witness testimony from recent depositions indicated that defendant Ventura was not permitted to go near the scene of the incident or Mr. Williams once law enforcement and medical first responders were there. (*See* Exhibit 26 at 36:8-37:11).

Defendant failed to respond to interrogatories that requested how the photographs were taken, and how Kohl's received the photographs. (*See* Henriks Declaration at ¶ 14). The parties met and conferred regarding defendant's amended Responses to Plaintiffs' Interrogatories. Plaintiffs' counsel agreed to an extension for defendant to produce the amended Responses to Interrogatories (Set One). Defendant's counsel **requested the extension because the employee who took the photograph was on vacation**. (*See id.*). Prior to the production of defendant's amended Responses to Interrogatories, defendant Ventura was deposed. (*See id.* at ¶ 15). Defendant Ventura invoked the Fifth Amendment as to all questions related to the incident, liability, and causation. (*See id.*). On November 7, 2019, Plaintiffs' counsel circulated correspondence outlining their request for amended responses to Interrogatories (Set One) Nos. 12-15 for further information and/or documentation to substantiate the assertion that defendant Ventura took the photographs. (*See* Exhibit 5).

On November 12, 2019, defendant produced amended responses to Plaintiffs' Interrogatories (Set One) Nos. 12-15 without a signed verification. (*See* Exhibit 6). The responses were deficient. Kohl's responded that they "believe" Mr. Ventura took the photographs with his cell phone. (*See id.* at No. 12). However,

7

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

1  **Defendant produced the amended responses after defendant Ventura invoked**
2  **the Fifth Amendment during his deposition**.  (Henriks Declaration at ¶ 17). This
3  is after counsel for Kohl's had claimed that the person who took the photographs
4  was "on vacation."   (*See id*.).      Thereafter, the parties submitted a pre-motion
5  telephonic discovery dispute hearing email to Magistrate Judge Kewalramani on
6  November 13, 2019.  (*See* Exhibit 7).

   **E.** <u>**Formal Discovery Dispute Hearing Governing Defendant's Deficient**</u>
        <u>**Discovery Responses**</u>

9       The parties appeared before Magistrate Judge Kewalramani for a pre-motion
10  telephonic hearing on December 20, 2019. [Docket No. 108].  Plaintiffs' counsel
11  explained the deficient responses to previously propounded discovery by Plaintiff
12  Washington, and the belief that there was video surveillance footage that was not
13  produced and/or likely destroyed in violation of the preservation letter sent out by
14  Plaintiffs' counsel. (Ogbogu Declaration at ¶ 6; *see also* Freidenberg Declaration at
15  ¶ 4).  Counsel for defendant stated on the record that everything responsive had
16  been provided to counsel, and stated that there was no other video surveillance
17  footage than what had already been produced.  (Freidenberg Declaration at ¶ 5).
18  The Court indicated that it could do nothing further due to the representations of
19  counsel for Kohl's.  **The Court explained that it could not compel something**
20  **that counsel, as an officer of the Court, claimed did not exist**.  (*See id*. at ¶ 6).
21  As such, the Court held as follows:  "the Court orders that to the extent a motion to
22  compel was requested, at this time, the motion is denied based on representations
23  by Defendant Kohl's counsel and their verified responses to the interrogatories at
24  issue." [Docket No. 180].  The Court encouraged the parties to continue with the
25  Fed. R. Civ. P. 30(b)(6) deposition set that morning, and to conduct further
26  discovery.  Should a new issue arise in the future, counsel could circulate a new
27  discovery dispute hearing email.  (Freidenberg Declaration at ¶ 6).

**F. Denny Jenner, Regional Loss Prevention Manager, Testified that there Were No Cameras in the Rear of Kohl's**

The parties conducted the deposition of Kohl's Fed. R. Civ. P. 30(b)(6) Person Most Knowledgeable, Denny Jenner in two phases.  The first deposition occurred on November 20, 2019.  The second deposition occurred on January 14, 2020. (Ogbogu Declaration at ¶ 7).

At the December 20, 2019 deposition, Mr. Jenner was produced as Kohl's Fed. R. Civ. P. 30(b)(6) Person Most Knowledgeable governing the video surveillance system, Loss Prevention Management System.  (*See* Exhibit 12).  Mr. Jenner testified that there was no security camera located at the back of Kohl's  in Menifee, California where the incident took place.  (*See* Exhibit 8 at 199:1-19, 200:4-10).  Mr. Jenner testified that the surveillance camera map of the Menifee Kohl's location was missing camera number 11 because of a numbering error.  (*See id*. at 108:10-22, 109:1-18; *see also* Exhibit 9).  **Mr. Jenner, under penalty of perjury, testified that the Kohl's in Menifee had no cameras on the back exterior walls**.  (*See id*. at 199:13-200:10).  Thereafter, **Mr. Jenner was provided with photographs of a video surveillance camera located in the rear of Kohl's on the exterior** wall by the loading dock.[2]  (*See* Exhibit 11).[3]  Mr. Jenner claimed that he had never seen that camera before, and he did not know that it existed.  (*See* Exhibit 8 at 202:19-24, 203:18-24, 204:3-10).   As defendant's Person Most Knowledgeable for the surveillance system, Mr. Jenner did not know what the camera was, and said it could be a "dummy" camera.  (*See id*. at 203:2-24).

On January 14, 2020, as the Regional Loss Prevention Manager, and Kohl's Fed. R. Civ. P. 30(b)(6), Mr. Jenner admitted that he testified that there was no camera in the back of Kohl's, which was false.  (*See id*. at 292:9-293:13, 292:14-

---

[2] The day before Mr. Jenner's deposition, Plaintiffs' hired a photographer to go to the Kohl's Department Store in Menifee, California to take photographs of all surveillance cameras on the exterior walls of Kohl's.  (Henriks Declaration at ¶ 19).
[3] The photographs shown at the deposition taken on November 20, 2019, were attached as an exhibit to Volume II of Mr. Jenner's deposition, taken on January 14, 2020. (Henriks Declaration at ¶ 19).

19).  Mr. Jenner testified the Plaintiffs' counsel was the one who provided him with knowledge that there was in fact a video surveillance camera in the rear of Kohl's. (*See id.* at 292:22-23).  Mr. Jenner was "shocked" that there was a camera in the back.  (*See id.* at 333:16-21).  Mr. Jenner changed his story that it was a "dummy" camera, and now testified that the camera was "not operational."  (*Id.* at 292:4-5, 295:4-16).  Mr. Jenner testified that it may have been operational at some time before, and was unable to say if the camera was plugged into the system at the time of the incident.  (*See id*. at 295:4-19)  If the camera was plugged in at the time of the incident, **the video surveillance footage would have been viewable from the loss prevention office**.  (*See id*. at 295:20-23).    Contrary to counsel's representations to the Court on November 20, 2019 at the discovery dispute hearing, contrary to defendant's verified responses to discovery, and contrary to the sworn deposition testimony of defendant's Fed. R. Civ. P. 30(b)(6) Person Most Knowledgeable, Denny Jenner, there *is* a video surveillance camera located in the back of Kohl's.  (Henriks Declaration at ¶ 20).

## G. Kohl's Notified Plaintiffs of the Destruction of the Server Two Days Priors to the Physical and Forensic Inspection of Kohl's

The parties engaged in numerous meet and confer efforts to schedule the physical and forensic inspection of the Kohl's in Menifee, California. (Ogbogu Declaration at ¶ 11). The parties were scheduled to conduct an inspection of Kohl's on February 20, 2020.  (*See* Exhibit 14).  The inspection was to include a physical inspection of the premises and a forensic inspection of the video surveillance system, server system, hard drive, and Loss Prevention Management System.  (*See id*.).  Counsel for Kohl's had indicated that Plaintiffs' expert would be able to conduct a forensic search of the server without issue.  (Ogbogu Declaration at ¶ 13).

Two days prior to the inspection, Mr. Robert Halliburton (Senior Manager of Corporate and Field Security of Koh's Department Store) provided a declaration that **Kohl's "upgraded" the server that held backed-up copies of the video**

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

**surveillance to the hard drive** on February 21, 2018, and that the "upgrade" **prevented any metadata recovery from the old server system**, which was thereafter recycled.  (*See* Exhibit 15 at ¶¶ 6, 7).  Up until this time, counsel for defendant had represented that the server system was available for inspection, and that the server would have metadata preserved from the date of the incident. (Ogbogu Declaration at ¶ 15).  This was the first time that Plaintiffs were informed that video surveillance footage and/or the server system had been destroyed despite multiple preservation letters served on Kohl's. (Ogbogu Declaration at ¶ 16; *see also* Henriks Declaration at ¶ 22.  The first preservation letter was served on January 18, 2018, with a second preservation letter served on January 22, 2018.  (*See* Exhibits 1 and 2).  **Kohl's knowingly "upgraded" the system server one (1) month *after* having been served with the two (2) preservation letters**.  Plaintiffs met and conferred with counsel governing the anticipated deposition of Mr. Halliburton.  (Ogbogu Declaration at ¶ 17).  Plaintiffs' counsel also sought any and all documentation governing the preservation of video surveillance footage and the server system, in addition to information regarding the vendors that maintained and/or installed the video surveillance footage. (*See id*. at ¶ 18).[4]

## H. <u>Kohl's Has No Documentation Related to its Vendors that Installed and Maintained the Video Surveillance System</u>

The parties met and conferred to coordinate the deposition of Mr. Halliburton.  (*See id.*).  Mr. Haliburton's testimony would involve the preservation of video surveillance footage and the server system, in addition to information regarding the vendors that maintained and/or installed the video surveillance footage.  Continuous efforts were required to coordinate this deposition because

---

[4] Counsel for Plaintiffs and their retained expert, Motti Gabler, still conducted a physical inspection of the Menifee Kohl's location on February 20, 2020, in addition to a forensic inspection of the Loss Prevention Management System. (Freidenberg Declaration at ¶ 7).  The parties walked around the store and viewed the loss prevention office.  The loss prevention office had no windows.  The emergency exit used by Mr. Williams was along the rear wall of the store located near the loading dock.  The surveillance video camera on the exterior wall near the scene of the incident was still present.  (*See id.*).

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY
SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

1   Mr. Halliburton resided in Wisconsin.   (*See id*. at ¶ 19).   Mr. Halliburton's

2   deposition was scheduled for February 26, 2020.  (*See* Exhibit 16).

3       Initially, Mr. Jenner, had been produced as Kohl's Fed. R. Civ. P. 30(b)(6)

4   Persson Most Knowledgeable regarding not only defendant's video surveillance

5   system, but also as to the installation, location, and functioning of the video

6   surveillance camera system.  (*See* Exhibit 13).  However, at his deposition, Mr.

7   Jenner was unable to identify the vendors that serviced the video surveillance

8   system at the time of the incident, and was unable to explain why the camera located

9   on the rear exterior wall was not plugged in.  (*See* Exhibit 8 at 300:13-22).  Mr.

10  Jenner testified that the corporate service technicians did not know why the camera

11  was not plugged in.  (*See id*.).  Without serving an objection to this subject area,

12  counsel for defendant indicated that "Mr. Halliburton would have that information."

13  (*See id*. at 291:1-2; *see also* 298:19-291:18).

14      Plaintiffs' counsel circulated correspondence that explained how Mr. Jenner

15  failed to answer questions fully, completely, and unevasively in his capacity of

16  Person Most Knowledgeable pursuant to Fed. R. Civ. P. 30(b)(6) and requested

17  documents related to the installation, servicing, and/or maintenance of the video

18  surveillance system.  (*See* Exhibit 17).  Plaintiffs also sought the video surveillance

19  footage in its original and/or native format.   After the inspection of Kohl's

20  Department Store in Menifee, California, on Monday, January 20, 2020, it had come

21  to counsel's attention that **the produced video surveillance has been doctored,**

22  **modified, extracted, and/or changed from its original format**. (Ogbogu

23  Declaration at ¶ 22).  Plaintiffs' digital forensic expert was unable to render an

24  opinion because he needed the original video footage in native format.  (*See* Exhibit

25  18). Mr. Gabler explained that after conducting the forensic analysis of the video

26  surveillance footage, there was a slight but material difference between the video

27  produced by Kohl's and the video produced by County defendants, although both

28  were alleged to have been from the same source – Kohl's.  (Ogbogu Declaration at

12

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

¶ 22).  On February 20, 2020, Plaintiffs' counsel circulated an email to Magistrate Judge Kewalramani to initiate the pre-motion telephonic discovery conference. (*See* Exhibit 19).

**I.** **Formal Discovery Dispute Governing Vendors of the Video Surveillance System and Video Surveillance in Native Format**

On February 24, 2020, the parties appeared before Magistrate Judge Kewalramani for a telephonic discovery dispute hearing.  [Docket No. 136]. Counsel for Plaintiffs explained the need for documentation and/or information related to the installation, servicing, and/or maintenance of the video surveillance system in order to take a meaningful deposition of Mr. Halliburton, set for Wednesday, February 26, 2020.  (Ogbogu Declaration at ¶¶ 24).  Magistrate Judge Kewalramani ordered Kohl's to produce responsive documents by 3:00pm that day. [Docket No. 136].   Should Plaintiffs find the document production deficient, Plaintiffs were advised that they could reach out to the Court for an expedited hearing.  (Freidenberg Declaration at ¶ 10).   The Court also ordered Kohl's to produce a declaration that the video surveillance footage that had been produced in discovery was produced in its native format, and that the video surveillance footage that had been produced was the only copy within the possession, custody, and/or control of Kohl's.  (*See id*.).  The declaration was to be produced by 12pm, February 25, 2020.[5] (*See id*.).

**J.** **Second Formal Discovery Dispute Governing Vendors of the Video Surveillance System**

The parties sought the intervention of Magistrate Judge Kewalramani again due to Kohl's deficient document production related to the installation, servicing, and/or maintenance of the video surveillance system.  (*See* Exhibit 20).  Counsel for Plaintiffs explained that on February 24, 2020, defendant produced documents

---

[5]  Mr. Figarotta declared that the video surveillance footage was saved to a disc for law enforcement, and that there "may be a slight variance in length of video dependent on the request." (*See* Exhibit 21 at ¶¶ 3, 4).

---

13

at 2:58pm pursuant to this Court's order, and upon review, were not responsive. (Freidenberg Declaration at ¶ 12). Defendants failed to produce documents that identified the vendors, technicians, and/or companies that installed and maintained the video surveillance, photographs, server storage, hard drive storage, and security system(s) at the Kohl's in Menifee, California. (*See id*.). Defendants produced two (2) excel sheets in native format (i.e. the ability to be modified) with notes that are unintelligible. None of the documents were specifically related to the time frame in which the incident occurred. The documents produced were served without verification. (*See id*.). Moreover, counsel for defendant circulated an email to Plaintiffs' counsel that **Mr. Halliburton was ill, and would not be able to move forward with the deposition** scheduled for two days later. (Ogbogu Declaration at ¶ 25). Counsel for Kohl's corresponded over email regarding the need to move Mr. Halliburton's deposition, but failed to address the deficient document production. (*See id*.).

On March 2, 2020, the parties appeared before Magistrate Judge Kewalramani for a telephonic discovery dispute hearing. [Docket No. 139]. Counsel for Kohl's, indicated that there were no other responsive documents to be produced related to the installation, servicing, and/or maintenance of the video surveillance system. (*See id*. at ¶ 26). Magistrate Judge Kewalramani ordered Kohl's to produce a declaration under penalty of perjury that the documents previously produced are the only responsive documents in the possession, custody, and/or control of the defendants. (*See id*.). The declaration was to set forth the status of the documents, and whether the documents had previously existed, but were since destroyed. (*See id*.). **Magistrate Judge Kewalramani cautioned defendant** and stated that Plaintiffs may seek sanctions if the deposition testimony of Mr. Halliburton differed from the information set forth in the declaration. (*See id*.). On March 3, 2020, a declaration of Mr. Halliburton was produced in response to the Court's Order. (*See* Exhibit 22). Mr. Halliburton declared that "Kohl's does

not possess any other contracts from the vendors who were involved with installation and service of the system and our search did not reveal any other responsive documents." (*Id*. at ¶ 4).

## K. **Robert Halliburton, Senior Manager of Corporate and Field Security, Had No Explanation for the Video Camera in the Rear of Kohl's**

The parties conducted the deposition of Mr. Halliburton on March 3, 2020. (Henriks Declaration at ¶ 23).  Mr. Halliburton testified that he is responsible for installing, supporting, and servicing all pieces of hardware and technology that support the loss prevention teams.  (*See* Exhibit 23 at 8:12-19).

Mr. Halliburton testified that **the corporate office had no understanding through any of its records as to why the camera at the exterior of Kohl's was installed, or how it was installed**.  (*See id*. at 58:9-16).  He stated "I don't have any explanation for how that camera appeared." (*Id*. at 70:18-19).  Mr. Halliburton was unable to testify as to whether or not the video surveillance camera was functional or not, of whether it had captured the January 12, 2018 incident.  (*See id*. at 58:9-22, 84:19-24).  Mr. Halliburton knew the vendors that installed and serviced the video surveillance cameras at the Menifee Kohl's location, but did not have any new documents to produce other than what counsel had provided previously.  (*See id*. at 59:13-18, 61:16-24. 62:17-24).

Mr. Halliburton testified that the loss prevention officers are trained to preserve and maintain "all critical pieces of evidence pertaining to the case in which they are involved." (*Id*. at 23:25-24:3, 27:8-15).  **The loss prevention officers have discretion to choose what is relevant to save**, and what is not.  (*See id*. at 27:16-21).  Any other preservation of evidence outside of the discretion of the loss prevention officer involved in the incident comes from legal counsel for Kohl's.  (*See id.* at 42:1-5, 101:17-19)  If the evidence is not preserved, it gets written over in approximately thirty (30) days.  (*See id*. at 22:6-21).  There was no policy to ensure that the hard drives are maintained in case the loss prevention officer did not

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

preserve all relevant evidence.  (*See id*. at 28:6-18, 30:11-20, 37:5-15, 117:14-118:4). Kohl's did not investigate the video surveillance footage that defendants Ventura and Blakeman selected, the loss prevention officers involved in the altercation with Mr. Williams, to ensure that all relevant evidence was preserved prior to the server "upgrade." (*See id*. at 86:3-7, 102:15-19, 115:9-116:9).

## L. Kohl's Produced Documents After the Deposition of Mr. Halliburton Despite Magistrate Judge Kewalramani's Order

On March 4, 2020, *after* the deposition of Mr. Halliburton and *after* the declaration of Mr. Halliburton stating that no other responsive documents existed, counsel for Kohl's produced a preservation letter from the Law Offices of Portasha Moore. Counsel for defendant stated that it **had not been previously produced "simply due to inadvertence."** (*Id*. Exhibit 24).  On March 2, 2020, Magistrate Judge Kewalramani had cautioned defendant by stating that Plaintiffs may seek sanctions if the deposition testimony of Mr. Halliburton differed from the information set forth in the declaration.  (Ogbogu Declaration at ¶ 26).  The declaration of Mr. Halliburton stated under penalty of perjury that **no other documents existed** that were responsive to Plaintiffs' requests governing the preservation of evidence, and documents related to the vendors that serviced the video surveillance cameras. (*See* Exhibit 22).  That was false.

## M. Current Status of Discovery at Present Date

The parties concluded discovery on March 6, 2020, as set forth in the Scheduling Order. [Docket No. 135].  In summary, Plaintiffs have uncovered the following evidence that contradicts that Ventura took the photographs of Mr. Williams at the scene of the incident, and supports Plaintiffs' position that video surveillance camera footage existed and has since been destroyed:

| No. | Description of Evidence | Support |
|---|---|---|
| 1. | Three (3) preservation letters were served on defendant Kohl's.  Counsel for Plaintiffs spoke with in-house counsel for Kohl's on at least two occasions | Exhibits 1-3; *see also* Exhibit 15; Exhibit 27; |

16

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

| | | | |
|---|---|---|---|
| | | governing the evidence to be preserved.  Defendant Kohl's still "upgraded" and/or destroyed the server system that contained the original video surveillance footage. | Henriks Declaration at ¶ 6. |
| | 2. | Defendant Ventura told Deputy Tibbetts that he and defendant Blakeman were in the loss prevention office when they saw Mr. Williams park his car in the back of Kohl's and walk to the front of the store. The loss prevention office has no windows. | Exhibit 25 at 19:18-20:21, 21:4-10, 22:4-23:5; *see also* Freidenberg Declaration at ¶ 7. |
| | 3. | It is uncontested that the video surveillance footage from the interior of Kohl's zooms in on Mr. Williams within seconds of walking inside the front entrance of the store. | Henriks Declaration at ¶ 8. |
| | 4. | Fire Fighter Roy Garcia, medical first responder, stated that he was with Mr. Ventura on scene to conduct a medical evaluation. Mr. Garcia testified that defendant Ventura did not take photographs of Mr. Williams and that  Ventura was approximately 20-25 feet away from Mr. Williams at all times. | Exhibit 26 at 36:8-37:11. |
| | 5. | Kohl's identified Mr. Ventura as to person who took the photographs of Mr. Williams *after* he had been deposed and invoked the Fifth Amendment. | Henriks Declaration at ¶¶ 14-17 *see also* Exhibits 4, 6. |
| | 6. | There is a "Loss Prevention Management System" reference number (SR-1282-18-1347) at the top and bottom of the photographs of Mr. Williams. The description at the bottom of each photographs indicated that photographs had been enhanced. | Exhibit 10. |
| | 7. | The camera map for the Kohl's in Menifee, California is "missing" the notation for Camera No. 11.  Mr. Jenner, the Regional Loss Prevention Manager, is unable to explain why a camera is missing on the map. | Exhibit 8 at 108:10-22, 109:1-18; *see also* Exhibit 9 |
| | 8. | Counsel for Kohl's represented to the Court and Mr. Denny Jenner testified in his deposition that no surveillance camera existed in the rear exterior of the store.   Subsequent investigation by counsel of the | Exhibit 8 at 199:1-200:10, 202:19-24, 203:2-24, 204:3-10 |

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

| | | |
|---|---|---|
| | Williams Plaintiffs revealed that in fact a surveillance camera existed at the back. | |
| 9. | Kohl's subsequently explained that the surveillance camera at the exterior rear of the store was a "dummy" camera. Later Mr. Jenner changed his story and said that while it was not a dummy camera, it was not connected to the system. Neither Mr. Jenner nor Mr. Halliburton could say that the surveillance camera was or was not connected on the date of the incident. | Exhibit 8 at 292:9-293:13, 292:4-5, 292:14-19, 295:4-19; Exhibit 23 at 58:9-22, 70:18-19, 84:19-24 |
| 10. | Loss prevention officers that are involved in an incident are the ones that are tasked with preserving all "relevant" evidence.  Kohl's did not investigate the video surveillance footage that defendants Ventura and Blakeman selected, the loss prevention officers involved in the altercation with Mr. Williams, to ensure that all relevant evidence was preserved prior to the server "upgrade." | Exhibit 23 at 22:6-21, 23:25-24:3, 27:6-21, 28:6-18, 30:11-20, 37:5-15, 42:1-5, 86:3-7, 102:15-19, 101:17-19, 115:9-116:9, 117:14-118:4. |
| 11. | Mr. Gabler explained after conducting the forensic analysis of the video surveillance footage, there was a slight but material difference between the video produced by Kohl's and the video produced by County defendants, although both were alleged to have been from the same source – Kohl's. | Exhibit 18; *see also* Ogbogu Declaration at ¶ 22. |
| 12. | Kohl's had no documents governing the vendors that installed and/or serviced the video surveillance cameras at the Menifee Kohl's location. | Exhibit 23 at 59:13-18, 61:16-24. 62:17-24. |

Plaintiffs respectfully request an order from the Court establishing liability and striking defendant's answer in its entirety. Plaintiffs also seek monetary sanctions.  In the alternative, Plaintiff requests an evidentiary hearing regarding the following: (1) bad faith conduct of defendant's agents, employees, and/or attorneys; (2) misrepresentations to the Court and to counsel; (3) intentional selection of video surveillance footage to be preserved with the rest having been destroyed, thereby preventing Plaintiffs from being able to conduct a meaningful comparison; (4) the "upgrade" of the server system that destroyed the entire hard drive; and (5) the

18

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

destruction and/or concealment of evidence from the exterior video surveillance camera.

## IV.   **ARGUMENT**

### A.   **Defendant Kohl's Intentionally Destroyed Video Surveillance Footage and the Server System**

Defendant Kohl's knowingly "upgraded" and/or destroyed the server system even though three (3) separate preservation letters demanded the maintained of all video surveillance footage and electronically stored information.

"Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citation omitted). "The court has inherent power to sanction parties or their attorneys for improper conduct ... which includes spoliation of evidence." *Glass v. Beer*, 2007 WL 1456059, at *2 (E.D. Cal. May 17, 2007); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). Spoliation sanctions are appropriate where: (1) the person in control of the evidence had a duty to preserve it; (2) the loss/destruction of the evidence was done with a "culpable state of mind"; and (3) the lost evidence was "relevant" to a claim or defense at issue. *See, e.g., Clear-View Techs., Inc. v. Rasnick*, 2015 WL 2251005, at *7 (N.D. Cal. May 13, 2015); *Montoya v. Orange Cnty. Sheriff's Dept.*, 2013 WL 6705992, at *7 (C.D. Cal. Dec. 18, 2013).

### 1.   **Kohl's Destroyed the Evidence in Violation of its Duty to Preserve the Video Surveillance Footage**

Every party has a duty to preserve relevant evidence.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006).  This duty "arises as soon as a potential claim is identified." *Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, 2014 WL 6851607, at *9 (S.D. Cal. June 16, 2014)(citation omitted).  Litigants have a duty to preserve "what [they know], or should know, is relevant in the action, is **reasonably**

---

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE

**calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery** and/or is the subject of a pending discovery request." *Toppan Photomasks, Inc. v. Park,* No. 13–CV–03323–MMC, 2014 WL 2567914, at *5 (N.D. Cal. 2014) (emphasis added). This may arise before litigation is formally commenced.  *See World Courier,* 2007 WL 1119196, at *1.  Once the duty to preserve evidence is triggered, it continues throughout the litigation. *See, e.g., Jimenez v. Menzies Aviation Inc.*, 2016 WL 3232793, at *4 (N.D. Cal. June 13, 2016).

On January 12, 2018, Kohl's loss prevention officers and Mr. Williams were in a physical altercation on Kohl's Department Store property in Menifee, California.  Riverside Sheriff's deputies and medical first responders arrived on scene.  The duty to preserve any and all evidence was triggered on that day due to the potential claim arising from the incident.  It is immaterial that formal litigation had not yet commenced.  Defendant Kohl's had a duty to preserve evidence even if Plaintiffs had not served a preservation letter (however, Plaintiffs served three preservation letters and spoke with in-house counsel for Kohl's on at least two occasions).  Any video surveillance footage that captured the incident would be reasonably calculated to lead to the discovery of admissible evidence, and would be reasonably likely to be requested during discovery.  On the date of January 12, 2018, defendant's duty to preserve evidence had been triggered.

## 2. Defendant Knowingly Destroyed Evidence after Plaintiffs Served Three Preservation Letters

A "culpable state of mind," includes negligence. *See, e.g., Cottle-Banks v. Cox Commc'ns, Inc.*, 2013 WL 2244333, at *14 (S.D. Cal. May 21, 2013); *see also Unigard Sec. Ins. Co.*, 982 F.2d at 368-69 (spoliation sanctions were warranted where a party negligently allowed evidence to be destroyed, even though disposal occurred when the party believed it had no legal claim). Where a party loses evidence or **fails to protect it from destruction after having "some notice"** that

it is potentially relevant to pending or contemplated litigation, the "culpable state of mind" element is satisfied. *Leon*, 464 F.3d at 959; *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("Surely a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.'").   It is well established that no affirmative or intentional act of destruction by the spoliator need be shown; simply failing to take appropriate measures to protect evidence from destruction or loss constitutes spoliation and is sanctionable. *See, e.g., Olney v. Job.com*, 2014 WL 5430350, at *14 (E.D. Cal. Oct. 24, 2014) (failure of plaintiff or his counsel to "mirror image his hard drive or ascertain whether data on the computer was being destroyed" warranted spoliation sanctions).

On January 16, 2018, January 22, 2018, and March 8, 2018, Plaintiffs served three (3) separate preservation letters on defendant Kohl's seeking the maintenance of video surveillance footage and all electronically stored information (including the server system).   Plaintiffs' counsel spoke with Kohl's in-house counsel governing the preservation of evidence on at least two separate occasions.   Despite this, defendant Kohl's knowingly spoliated evidence.   First, Kohl's permitted defendants Ventura and Blakeman, the loss prevention officers involved in the incident, to choose the "relevant" evidence to collect.   Permitting potential defendants in a criminal and/or civil case to select relevant evidence at their discretion without any oversight is the type of negligent failure to protect evidence clearly established in spoliation jurisprudence.   Second, Kohl's failed to save the metadata and/or electronically stored information prior to "upgrading" the system in late February of 2018.   Third, Kohl's "recycled" the server thereby preventing any information from being retrieved from the server.    Fourth, there is overwhelming evidence that there was video surveillance footage that would have captured the physical altercation with Kohl's loss prevention officers.   Defendant intentionally destroyed and concealed evidence that was integral to Plaintiffs' case, and Plaintiffs have no other means to obtain the video surveillance footage.

### 3.  <u>The Video Surveillance Footage Was Integral to the Plaintiffs' Case</u>

Kohl's destroyed integral evidence in blatant violation of Plaintiffs' three preservation letters, and despite at least two conversations with Plaintiffs' counsel governing the evidence demanded to be preserved.  Evidence is deemed to be relevant when "it would have clarified a fact at issue in the trial and otherwise would naturally have been introduced into evidence." *Clear-View Techs.*, 2015 WL 2251005, at \*10; *Olney*, 2014 WL 5430350, at \*22.  Because the precise relevance of destroyed evidence often "cannot be clearly ascertained because [it] no longer exist[s]," spoliation sanctions are warranted wherever the destroyed evidence is generally of the type that one would expect to be used in the litigation.  ***Waters v. Kohl's Dep't Stores, Inc.***, 2015 WL 1519657, at \*4 (N.D. Cal. Apr. 2, 2015) (relevancy, in a spoliation analysis, "is a very broad standard").

The Court in *Waters v. Kohl's Department Stores* already found that Kohl's destroyed relevant evidence that it had been under a duty to preserve in 2015:  "It is **inexplicable that Defendant decided not to preserve the footage from the P.T.Z. camera** showing Plaintiff leaving in a wheelchair. Such footage is certainly relevant to show her condition at the time of the incident. If Defendant **decided to destroy such relevant evidence, it is possible that other relevant evidence was also destroyed**."  2015 WL 1519657, at \*8 (emphasis added).  The same issues arise here.  The video surveillance footage would have shown the physical attack by defendant loss prevention officers, and it would have shown Mr. Williams' condition at the scene.  Additionally, the parties dispute causation regarding Mr. Williams' untimely death.  The video surveillance video would have depicted when medical responders left the scene, and when Deputy Tibbetts left the scene with Mr. Williams for the "okay to book."  The video surveillance footage would have established a time frame for Mr. Williams' medical treatment, and is relevant for causation.  The video surveillance footage of the incident is not only relevant to Plaintiffs' cause, but essential, and has severely prejudiced Plaintiffs.

**B. <u>Counsel for Defendant Kohl's is Culpable for the Spoliation of Evidence</u>**

The responsibility for ensuring that evidence is preserved "**runs *first to counsel*, who has 'a duty to advise his client of the type of information potentially relevant to the lawsuit** and of the necessity of preventing its destruction.'" *Montoya*, 2013 WL 6705992, at \*10 (citation omitted) (emphasis added); *Surowiec*, 790 F. Supp. 2d at 1006.  "As such, counsel's failure to oversee a client's discovery efforts may merit sanctions." *Knickerbocker v. Corinthian Coll.*, 298 F.R.D. 670, 677-78 (W.D. Wash 2014) (sanctioning counsel for its "lackluster search for documents, failure to implement a litigation hold," and other misconduct);  *HM Elecs., Inc. v. R.F. Techs., Inc.*, 2015 WL 4714908 (S.D. Cal. Aug. 7, 2015) (holding that defendant's attorneys "engaged in sanctionable discovery practices" by failing to "craft and implement a litigation hold, or otherwise communicate to [their clients] the importance of preserving relevant documents"); *Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932 (S.D. Cal. Jan. 7, 2008) (sanctioning attorneys for failing to ensure that their client complied with its discovery and preservation obligations and making several disciplinary referrals to the State Bar of California).

It is undisputed that Plaintiffs served three (3) preservation letters. Defendant's legal department spoke with plaintiffs' counsel on at least two occasions governing the evidence sought to be preserved.  It was incumbent upon counsel to ensure that any and all evidence was preserved. Counsel knew and/or should have known to instruct Kohl's not to move forward with the server "upgrade."  Or, at the very least, counsel should have investigated the video surveillance footage that defendants Ventura and Blakeman selected to ensure that all relevant evidence was preserved prior to the server "upgrade." Any and all potentially relevant evidence should have been burned to a CD or backed-up before the server was recycled and destroyed forever.  Counsel for Kohl's had a duty to advise their client of the type of information that would be relevant to preserve.

1   Counsel utterly failed to abide by that duty.

2   **C.** **Defendants Have a Pattern and Practice of Destroying Evidence and**

3   **Plaintiffs Seek to Strike Defendant's Answer and Sanctions**

4   Defendant Kohl's Department Store's litigation tactic is to destroy evidence

5   when exposed to high liability cases.  Based on the numerous cases in which

6   defendant has spoliated evidence, **it is apparent that defendants prefer to be**

7   **sanctioned with an adverse inference jury instruction than produce damaging**

8   **video evidence in discovery**.  *See Waters*, 2015 WL 1519657, at *4 (N.D. Cal. Apr.

9   2, 2015) (finding that Kohl's destroyed relevant evidence that it had been under a

10   duty to preserve and therefore ordered a "more robust" jury instruction than the one

11   offered by Kohl's; *Matteo v. Kohl's Dep't Stores, Inc*., 2012 WL 760317 (S.D.N.Y.

12   2012) (awarding Plaintiff monetary sanctions of attorneys' fees and costs, including

13   the costs incurred in bringing this motion for spoliation, because Kohl's failed to

14   properly preserve video surveillance footage); *Siggelko v. Kohl's Dep't Stores, Inc*.,

15   2009 WL 750173 (E.D.N.Y. 2009) (holding that Kohl's had a duty to preserve

16   photographs from the scene of the incident and failed to do so).  This Court should

17   hold defendant accountable for its intentional action of destroying evidence, and

18   strike its answer in its entirety, and award monetary sanctions to Plaintiffs.

19   The Court has broad discretion in fashioning an appropriate sanction,

20   including financial sanctions, an adverse jury instruction, or outright dismissal of

21   a spoliating party's claims. The Ninth Circuit has explicitly recognized the

22   "inherent discretionary power to make appropriate evidentiary rulings in response

23   to the destruction or spoliation of relevant evidence," and that sanctions for

24   spoliation of evidence may be imposed under the court's inherent powers to manage

25   its own affairs. *See Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th

26   Cir.1993); *Leon,* 464 F.3d at 958.  A party may move to strike from "any

27   pleading any insufficient defense or any redundant, immaterial, impertinent, or

28   scandalous matter." Fed. R. Civ. P. 12(f); *see also Hart v. Baca*, 204 F.R.D. 456,

457 (CD. Cal. 2001).  Here, Kohl's engaged in business as usual: destroy evidence and bear the consequences of an adverse jury instruction rather than produce damaging video footage.  Plaintiffs request more than the adverse jury instruction (to which they are entitled).  Plaintiffs seek an order from the Court establishing liability and striking defendant's answer.  Defendants should not be permitted to dispute liability and argue that Plaintiffs fail to meet their evidentiary burden after intentionally destroying evidence that directly relates to liability and causation.

Plaintiffs also seek monetary sanctions for the destruction of evidence.  The purpose of spoliation sanctions is not merely to put plaintiffs in the same position they would have been in absent of such spoliation. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (discussing the punitive and deterrence rationale inherent in the issuance of sanctions); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 2010 U.S. Dist. LEXIS 93644, at *131 (D. Md. Sept. 9, 2010) ("[T]he range of available sanctions is **designed to punish culpable conduct and deter it in others** and also to **put the party adversely affected by the spoliation in a position** that is as close to what it would have been in had the spoliation not occurred).  Plaintiffs seek compensation as a result of the numerous meet and confer efforts governing the spoliation of evidence, attendance and preparation for both telephonic and in-person discovery dispute hearings, and the time and costs incurred to draft this motion, totaling **$76,450.00**.  (*See* Henriks Declaration at ¶ 27; Freidenberg Declaration at ¶ 13; Ogbogu Declaration at ¶ 28).  Plaintiffs also seek sanctions as a punitive and/or deterrence measure in an amount this Court finds proper to put Plaintiffs in as close as a position as if the spoliation had not occurred.

## V.     <u>CONCLUSION</u>

Defendants should be precluded from capitalizing on the prejudice it has caused Plaintiffs.  Plaintiffs request this Court to strike defendant's answer in its entirety, and to enter sanctions against defendant for spoliation of evidence. In the alternative, Plaintiffs seek an evidentiary hearing, should the Court find it needed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DATED: March 16, 2020          **MCMURRAY HENRICKS LLP**

By: /s/ Yana G. Henriks_____
**YANA G. HENRIKS**
**LAUREN I. FREIDENBERG**
Attorneys for Plaintiffs  DEMAJAY
WILLIAMS, DESTINY WILLIAMS, a
minor by and through her guardian *ad
litem* Desiree Renee Wilson, JODI
WILLIAMS, , a minor by and through her
guardian *ad litem* Danielle Banks, and
TAMMY JOHNSON

DATED: March 16, 2020          **SAMUEL O. OGBOGU INC. A.P.L.C.**

By:          /s/ Sam O. Ogbogu
**SAMUEL O. OGBOGU**
Attorney for Plaintiff,
LARISSA WASHINGTON, et al.

## JOINT MOTION SIGNATURE CERTIFICATION

Pursuant to Local Rule 5-4.3.4(a)(2) of the United States District Court for the Central District of California, I certify that the content of this document, and the accompanying proposed order, is acceptable to named counsel above and that I have obtained authorization from counsel to affix his electronic signatures to this document.

DATED: March 16, 2020          **MCMURRAY HENRICKS LLP**

By: /s/ Yana G. Henriks_____
**YANA G. HENRIKS**
**LAUREN I. FREIDENBERG**
Attorneys for Plaintiffs  DEMAJAY
WILLIAMS, DESTINY WILLIAMS, a
minor by and through her guardian *ad
litem* Desiree Renee Wilson, JODI
WILLIAMS, , a minor by and through her
guardian *ad litem* Danielle Banks, and
TAMMY JOHNSON

PLAINTIFFS' JOINT MOTION TO STRIKE DEFENDANT'S ANSWER AND MONETARY
SANCTIONS FOR SPOLIATION OF EVIDENCE AGAINST KOHL'S DEPARTMENT STORE